Case 25-2991, Southern District of Iowa, Shamrock Hills v. State of Iowa et al. May it please the Court. Counsel, my name is Adam Barney. I'm the attorney for Appellant Shamrock Hills. This case presents a First Amendment challenge to Iowa's laws governing public adjusters, generally understood to be professionals that homeowners may hire to help them with their insurance claims. The problem in this case comes from how Iowa defines a public adjuster. They are defined in substantial part by speech, and residential contractors are barred from acting as public adjusters. In other words, in Iowa, residential contractors are barred from engaging in certain speech. Does the Iowa statute differ from the one that was at issue in Stonewater? I think I got the name right. It does. What specifically is the difference that matters? The difference that matters between Stonewater and the Texas case, and here in Iowa, is that Texas is on behalf of. Texas is explicit that its statute only applies to people who are acting on behalf of the homeowner. Here, if a homeowner asks a contractor, explain to me the process of how insurance works, the contractor cannot say how the process works. Point me to the language in the Iowa statute that's broad enough to encompass that, if you would. Sure. 522C-18 defines public adjuster. It means a person who, for compensation or other thing of value, does any of the following. Acts for or aids an insured in negotiating or affecting the settlement of a first party claim. Subsection C, directly or indirectly solicits business investigating or adjusting losses, or advising an insured about first party claims for loss or damage to the real property. That statute used to have language of on behalf of. It was removed last year. Just as a little interjection, when was it changed? Before or after the district court issued its opinion? It was changed after briefing and before the opinion, I believe. I was not aware that the change had been made in that interim. Nobody notified the district court that it had been changed at that time. It doesn't change the analysis. It doesn't change our claim. If there had been a change in the law that would have mooted out the position that Shamrock has taken in this case, sure, that would have an effect here. But what the change actually did was reinforce what Shamrock's claim has been here in this case. Not only facially, but as applied. As applied, Iowa is coming after these contractors, citing them for administrative and civil penalties and criminal penalties or potential criminal penalties of a felony. Not for acting on behalf of somebody, but for simply explaining the process. So do we have an issue that the district court did not address the statute that you're asking us to address? Is that fair? That is not the change. With the change, correct. So, counsel, as it's currently worded, it's my understanding that you acknowledge the statute is viewpoint neutral, but you argue that it's content based. So tell us how it regulates content. Sure. So it regulates content. My residential contractors can talk to homeowners, they can talk to insurers about whatever they want. They can talk to them about their family. It only becomes a felony in Iowa when they talk about insurance. A residential contractor mutters the word insurance in Iowa, they're at risk of a felony. You have to look to the content of the communication to bring it there. To the court's question of did the district court analyze this specific statute, they didn't, or it didn't. But the analysis that was put in there is not altering the statute. It's altered by what the change was. What about the fact, though, that the content that you're talking about, insurance, it's for negotiating or effecting a settlement. So, I mean, if you just, if the contractor says so, do you have insurance and who is it with and how much is it for and what does it cover, that's not negotiating or effecting a settlement. But that is talking about insurance. That is talking about insurance and Iowa is applying it, saying that contractors cannot even speak to those things. Was it applied to Shamrock here? The way that it's been applied to Shamrock here was through two warning letters. And those warning letters advised us to remove high level discussion or statements, not only by us, but customer reviews saying Shamrock has helped us through the insurance process. And they said, you need to remove that. You can't help them through the insurance process. Shamrock spoke to the insurance company for me. He can't speak to the insurance company. The simple fact of speaking to the insurance company, Iowa deems a felony. Let me ask you, are you challenging the licensing framework and requirement beyond the exclusion for contractors? That's not our principal challenge here. What are you challenging? We are not, well, we do not contend that Iowa cannot regulate public adjusters. There is a place for licensing professionals. If there was no restriction on residential contractors and we could get a license if we took the tests and did those types of things, we would take the tests, we would abide by the regulations. They are infringing our speech by not allowing us to even participate in that process. Counsel, under your analysis of the Iowa statute, if that same analysis was applied to statutes prohibiting the unauthorized practice of law, would those statutes be subject to strict scrutiny? I do not believe that they would. And it's one of the things I want to talk about with Chiles, and I wanted to spend a lot of my time here today talking about Chiles because I think it's important what the Supreme Court issued in its ruling two weeks ago. One aspect of that decision was its discussion of history and tradition and how it applied to these types of claims. There are certain levels of speech that do traditionally receive a diminished level of protection. To get that, there has to be persuasive evidence of the historical tradition here. And I would submit to you, Your Honor, that the practice of law is probably the strongest historical evidence of some sort of regulation. The practice of law has been regulated since before the founding. It's been regulated ever since the founding. This case is not about the practice of law. And if the practice of law, if that case ever came to this panel, if it ever came to this Court, I would suggest to you that you'd be looking at the history and tradition here. The sky is not going to fall if you rule in favor of Shamrock, as the appellees have said. I'll say that there is no historical tradition here of public adjusting, from best we can tell. Regulation of public adjusting dates back to probably the 1970s, similar to the timeline that Chiles found regulation of the therapist relationship in the Supreme Court definitively said that does not meet the standard for historical measure there. The other aspect of Chiles that I really want to talk about here this morning is its discussion of incidental burdens on speech. And that's really what the District Court ruled on here. The District Court found that this law only had incidental effects on speech. What Chiles said, Chiles reinforced, and I don't think Chiles changed the, there was no blazing new path but it really just laid out the law in a much clearer way than I think the Court ever has in the past. And so there's only two circumstances when laws restricting speech can be upheld as incidental burdens. And the first circumstance is when speech is integrally related to unlawful conduct. And it cites two cases as examples. The first is U.S. v. Williams which says the state may regulate speech promoting the sale of contraband. Selling contraband is a crime. You don't have a First Amendment right to promote that crime. The second is Gibney v. Empire State. Gibney was the case that the District Court found and really relied upon in finding the incidental burdens here. This case is not Gibney. Gibney was union members who were picketing a wholesaler who would not enter into exclusivity agreements that would disallow the sale of ice to non-union members. But why isn't negotiating and reaching a settlement, why isn't that conduct? And that's sort of what's been addressed I think in this letter in terms of your advertisement. Why isn't that different than just talking about insurance to a homeowner? Sure. So the Supreme Court has kind of pulled back that and said these are the word games that the state of Iowa is trying to play here on negotiating. Or settlement. Let's focus on settlement. Like actually coming down to terms and figuring out the bottom line. What the Supreme Court has said, when you're looking at conduct you have to look to what's actually being regulated. And you can't create this circular game using word play to treat speech as conduct. And the way the Supreme Court said this in Childs is it's the unlawful conduct and then the second is the conduct has nothing to do with speech. And that's the flag burning, right? The ordinance against burning fires outside. That impacts speech. I take it, according to you that was Iowa's position in Childs, right? Iowa's position was similar to our position that we're presenting here today. On this particular distinction between conduct and speech, right? Yes. You can't play the word games. You can't play the word games. And I think that Justice Gorsuch's majority opinion in Childs laid out even starker than I think anybody anticipated just exactly how this speech and conduct dichotomy plays. And if you look at just the two ways that you can find speech that's incidental to conduct, there's no way. Now Childs had viewpoint discrimination, right? And Justice Kagan at least suggested that it might be a much more difficult case if that was missing. You don't dispute that that's missing. I think Judge Kelley maybe asked you that earlier. We don't dispute that this is... So is this harder than Childs then? Is that in Justice Kagan's area of concern? I don't believe that it is. The majority opinion was clear in its view that viewpoint neutral is still content-based subject to strict scrutiny. What viewpoint-based discrimination is, that's just the egregious form. That's the one that any of us can pick out. It's obvious they're picking sides here. But if it's still content-based, it's still subject to strict scrutiny. And the state is still required to show those compelling needs for the law. What if the burden is only incidental? Then are we still under strict scrutiny? If it's only incidental and it falls under those two categories that the majority laid out, then you're not necessarily under strict scrutiny. You can't fit this one there. This is not incidental to unlawful conduct. It's not unlawful in Iowa to have insurance coverage. If it was unlawful in Iowa to have insurance coverage, you could restrict speech that promotes settling insurance claims. That's not this case. This case is not the second category about outdoor fires, conduct that you don't have to look at the speech at all to know. To understand the application of this law, you have to look at the speech, period. Unless the court has any further questions, I'll reserve the remainder of my time. Thank you. Good morning, Your Honors. May it please the Court. Shemrock challenges two laws that regulate professional conduct. One requires a license to engage in the practice of public adjusting. The other regulates professional contractors by prohibiting them from wearing two hats on the same project. So it prohibits residential contractors from acting as public adjusters while working on the same project. Taken together, those laws protect Iowa homeowners and insurers against exploitation after natural disasters. As regulations of professional conduct, those laws are afforded less protection under the Amendment. They're not subject to strict scrutiny. What's your case for that? I don't read the child's majority to say that. I read it quite to the contrary to say that professional speech is treated similar to others' speech, subject to a couple exceptions. I think you're exactly right, Your Honor. That's about professional speech. What we have here is professional conduct. I think this gets to the heart of this case. Is this conduct or is this speech? My friends keep talking about professional speech, but the first question before we get there is, is this conduct or is this speech? And that's why I think Child's doesn't change much here. When we say, is this, what are you talking about when you say this? Yes, two things, Your Honor. First, we should look at the statute and see what the statute regulates. We interpret the statute and see what falls within that scope. Then here, second, because we have an as-applied challenge, we look at the conduct that Chair Morocco alleges that they engage in that falls within the scope of the statute. Their argument is they can't talk with homeowners about insurance. What's your take on that? That's incorrect, Your Honor. I think if we look at the guidance that the Iowa Insurance Division has issued both to Shamrock specifically and then publicly, generally to the public, it has a series of do's and don'ts. This guidance was attached to one of the letters that was sent to Shamrock. What it says is you can talk to an insured, a potential client, generally about the process. I think the word that it uses is you can tell a client what might be normally covered in the insurance process. You can talk generally. This Court is well familiar that if you look at the Young v. Ricketts case from about a decade ago here, once you get into individualized advice, looking at interpreting the policy here, giving individualized advice, exercising judgment on behalf of... Advice is speech, isn't it? Generally speaking... You said it prohibits advising. That sounds like speech. Your Honor, I don't think advice is necessarily speech given the context of the statute here. What we need to do is look at the full regulation. It's not just that there's any prohibition on advising. The only part of our statute that talks about advising is subsection C within 522C. But it's been applied. Sorry, Your Honor? It's been applied to Shamrock in this case, has it not? Actually subsection C I don't think has been applied because none of the facts I think that Shamrock actually alleges suggest that they've solicited business advising insureds about a first-party claim. And so it's not just any advice. It's the soliciting business part. And this is where the statute's much narrower than Shamrock lets on. It's a limitation on soliciting business advising. And this Court just last fall in Brant v. Griffin interpreted referral in the context within which it was used as conduct. And I think that's what you can do here with advising. What advising means is to give a recommendation on what should be done. Counsel, how about advertising? I guess I thought that the state was conceding in its brief that the ban on advertising incidentally burdens speech. And the District Court here found that there was an incidental burden on speech as well. And yet you're arguing for rational basis review. As to the advertising section, Your Honor, Shamrock has conceded that that sort of rises and falls with the other sections. And we would agree with that, I think. So if subsection A or subsection C are constitutional, then subsection B, if we look at what subsection B says, it's advertising for what's included within subsection A. So if subsection A is constitutional, then advertising for that would fall within the bucket of advertising. Constitutional under what standard or under what level of scrutiny? I think, Your Honor, that would be a restriction on commercial speech. Subsection B would be. And that would get intermediate scrutiny. But Shamrock here has conceded that B flows from A. So we don't have to really get to specifically to B because they conceded that if A is constitutional, then A applies. They've not argued at any step of the way, actually, intermediate scrutiny. So I would argue they forfeited any argument under intermediate scrutiny. They've only argued in both their complaint, their district court briefing, and then on appeal, they've only argued strict scrutiny. And so if you decide that any of these laws should even get intermediate scrutiny, that would be forfeited here. We think this should get rational. So Iowa thinks that the prohibition on soliciting, advertising, advising, and negotiation doesn't implicate the First Amendment? Your Honor, I would say, no, sorry, no, we're not saying it doesn't implicate the First Amendment. We're not arguing this professional speech doctrine that Shamrock kind of lets on. The professional speech doctrine, the Supreme Court has said, that's a no-go and that's not new from trials. That's been the way for a long time. Why wouldn't we be at least under intermediate scrutiny? Your Honor, I think under subsection A, let me step back, 522C is a state licensure requirement for professional conduct. Courts across the country have said that licensure requirements get rational basis. That's the 11th Circuit in Del Castillo that we cited that in our briefs. This is 6th Circuit in Macklemore. This court, I think, got there. What about Orlick v. Florida Bar? Would that put us under intermediate scrutiny? Orlick v. Florida Bar, I think, was a restriction on solicitation. It wasn't necessarily a licensure requirement, it was a restriction on speech. Here all that this is, is not that you can't engage in this speech, it's that you just need a license for it. But I would give them a shamrock just to say they're not challenging that. That's exactly right, Your Honor. I was going to get to that point next. I think what I heard my friend say is they're sort of conceding any challenge directly to 522C, so the laws that we should really be looking at from the first step is 103A.71. And that would get to the court's concern about what's the difference between Iowa's law and Texas's law. Because if you look at 103A.71, it has that on behalf of language. What 103A.71 says is a residential contractor shall not represent or negotiate on behalf of or offer or advertise to represent or negotiate on behalf of a homeowner on any insurance claim in connection with repair work. And that's the current version of the statute? That is the current version, Your Honor. I admit that 522C dropped out the on behalf of language. I can get into why I don't think that changed the coverage. I think we can look at that statute and see they're trying to clean some things up. The structure of the statute shows that 522C is still a status-based restriction. But they don't seem to be challenging 522C directly anymore. They're strictly just challenging it as applied to residential contractors. Is there any legislative history as to why the Iowa legislature made that change? Not that I'm aware of, Your Honor. It's certainly not in this record because the briefing in the district court came before that and then the opinion came after. I don't think that would matter either because the substantive part of 103A.71 didn't change. And that's all that we're dealing with here. 103A, given that they're not challenging directly 522C. But aren't they challenging the definition? I kind of hear their argument to be that it pivots on the definition of public adjuster. Yes, it pivots on the definition of public adjuster. And because what they're challenging is an as-applied challenge, we should look at the facts that they're pleading. And if they're challenging 103A.71, which the Iowa Supreme Court and 33 Carpenter said it means a residential contractor may not act as a public adjuster, then yes, we get to 522C to determine what does public adjuster mean. So we get there, but it's not necessarily they're challenging 522C as the restriction on speech. They're challenging 103A.71 as a restriction on their speech. The bill still has the on behalf of. Exactly, Your Honor. So 103A.71 is what applies to residential contractors. And then that gets me to this point of, this is an as-applied challenge. And so to your question before, what is this? What are we looking at? First, it's the statute. We have the on behalf of language. And second, it's as applied to Shamrock. And what is Shamrock alleging here? If you look at paragraph five of their complaint, it says, at all times relevant here to, Shamrock was engaged in the business of residential contracting. That's not speech. That is conduct. And so the launching point for any. No, but that's why they were excluded under the statute, right? I mean, that's not conceding that they're only pleading conduct. Your Honor, that is why. That's what triggers the application of the restrictions that are in the statutory structure. Exactly, that is the triggering activity for why 103A.71 applies. Well, no, it's the triggering definition. That's not, from their view, I don't think they view it as the triggering activity. I mean, the activity that triggered the letter from the state was arguably speech. Your Honor, to push back on that, I think what triggered their letter is that their residential contractor tried to do these things. If they weren't a residential contractor and they were engaging in this type of conduct, the letter might not have issued. Because what the letter talks about is, it cites 103A.71 and it says, you are a residential contractor doing all these things that are public adjusting. Now, so that is a restriction on their conduct because their conduct is, well, we're going to be a residential contractor. Okay, well, now you have this limitation that's on you. So, it seems like you have a fairly broad view of conduct. And the counsel on the other side has suggested that the trials majority has kind of suggested we tighten that up. And in fact, I think some of the interaction with maybe one of the dissenting opinion may have engaged in that. Would you explain to me why that's not right? Yes, Your Honor. What CHILES did was, I think we have to look at the context of what CHILES was. It too was an as-applied challenge. The majority opinion talks about that it was an as-applied challenge to exclusively speech-based conduct. So, you didn't have a similar situation as Shamrock here in CHILES where you had somebody that was engaging in one type of professional conduct that wanted to do something on top of that. All you had in CHILES was a medical professional who was restricted from doing something. And that something was exclusive talk therapy. There wasn't any prescriptions given. There wasn't any physical treatment or things like that. There wasn't conduct that was being regulated as applied to CHILES. Isn't this kind of a circular argument depending on what you define conduct? I mean, what is the conduct here that's being regulated that's not speech? Your Honor, I don't think it's circular because I think it's defined by the as-applied challenge. And here, they're not making an as-applied challenge as somebody who doesn't want to engage in any conduct. And so, let's look at what conduct is. No, they're saying they want to engage in speech. And we're arguing about whether it's speech or conduct. They're saying it's conduct. Your Honor, it's because I think they wouldn't dispute that engaging in residential contracting is conduct. But you're not prohibiting them from engaging in residential contracting. You're prohibiting them from engaging in, they say speech, you say conduct. Yes, Your Honor. But the triggering activity is that they are a residential contractor. The triggering activity is that they're speaking to homeowners. And so, I'm happy to concede that point, at least for purposes of moving forward to answer your concern here. If we look to 522C, then that's where they're saying the speech lies, not in 103A-71. So looking to 522C, we again start with the statute and then look at the as-applied conduct. So if we look to the statute, subsection A, what the words used in subsection A are is aids and insured. They're just focusing on the aid word, but it's aids and insured in negotiating or affecting the settlement. And Judge Kelly, you were getting to this point of, well, isn't the settlement part conduct? And I think that's exactly right, that settlement of an insurance claim is conduct. There are speech elements to it, just as in Brant v. Griffin, there were speech elements to referral there. But referral itself was conduct. And that's what you have here with settlement, with settlement of a first-party claim. So to distinguish child, child that was conceited, that it was pure speech, is that fair to say in that case? I think that's exactly right. And the question there was, essentially this professional speech doctrine, just because it's in the professional world, is it exempted from the First Amendment or subject to less than scrutiny? That's not what you have here. We're not just arguing the professional speech doctrine. If you do determine this is speech, we don't have to get out of jail a free card because it's professional. Then we'd have to get into commercial speech, which, again, gets intermediate scrutiny, and we argue they forfeited intermediate scrutiny. So there's no path for them to get the strict scrutiny. But if you look at subsection A and subsection C, both turn on conduct. A turns on settlement, which the Texas Supreme Court in Stonewater analyzed well, I think, by looking at the definition of settlement. It's conduct. There are speech elements to it, of course. To engage in settlement, you might have talks. You might have emails. But the act of settlement requires interpreting an insurance policy, assessing a home's value, assessing the damage, applying those things all together. That's expert knowledge. That's judgment on behalf of a client. That's what this court in Yonge v. Ricketts said amounts to professional conduct. Under C, C is a restriction on soliciting business, investigating or adjusting losses, or advising an insured. And so, yes, I would concede in the abstract advising could be speech. As used in the statute, it's not. Because advising means to give a recommendation on what should be done. And here, what does that mean in the public adjusting world? It means you need to assess the property, interpret the policy, you need to do things that are not just speech. So this is not an exclusively speech-based challenge. And if we look to the conduct that was listed in the letter, which I think we can say is the conduct that Shamrock's alleging they're engaging in, some of that conduct is, they helped me with the insurance claim. Well, helping with an insurance claim crosses a line from the practice of residential contracting to doing things that are individualized to a claim, interpreting a policy. Some of the conduct is, they filed a claim for me. They talked to the insurance company and they took it from there. So it's different than the Texas case in that that was based on the agency relationship, at least to a certain degree, right? And here you're suggesting that may be part of it, but not necessarily. It's more of a conduct focus. Is that a fair attempt at a summary? I think that's right. And you put it much better than I have here. But on behalf of, certainly it's still here in 522C, like I mentioned, the structure of the statute, if you look at 522C4 and C11, which is the standards of conduct, it says a public adjuster needs complete loyalty to the insured. It gets that point across that this is a representative capacity-based thing. So I wouldn't concede that we're different from that, but we have an additional requirement, which is ours is status and conduct. So the restrictions here are both based on status, because 103A71 has the on behalf of language. 522C. Your view on the other opinions in the Texas case raised some questions about the majority. In other words, that it was purely based on agency. I think there's an interpretation of the Texas Supreme Court that it was purely based on agency, and we're okay under that too. So we could sidestep this conduct question, and our law is just on agency, which I think, if I may complete my answer, the structure of 522C, I would urge the court to look at C4, C11, and the promulgating regulations there too, which get this agency, the status-based requirement across for 522C. And then, of course, 103A71 has that on behalf of language. So there's nothing materially distinguishable between our law and Texas's law. If there are no further questions, I would ask the court to affirm both on the First Amendment claim and the vagueness claim. Thank you, your honors. With respect to my friend, he's playing the word game that the Supreme Court has said you can't play. You can't call speech conduct when it's speech. And the line that they're trying to draw here is, well, if you're advising someone, you're actually helping them do something. Look to Holder, right? Congress passed a law that says you cannot materially support terrorists. It's a good law. Lawyers challenged it, saying, that infringes my right to speak, to advise clients. Government said, we're just regulating conduct. Supreme Court said, no. Advising is not conduct. When it's done by speech, it's speech. That's what it is. And in Holder, government had compelling reason, and the law was upheld. And if Iowa wants to regulate speech as speech, they should similarly be held to that standard, that exacting standard. On the question about how the conflict of interest provision and the definition of public advisor works, our position, just so I'm crystal clear on it, is, does the definition of public adjuster implicate speech? It does. The definition implicates speech. We are not challenging it, because we believe Iowa would probably be able to find grounds to say that there's necessary licensure there. Our challenge to your question, Your Honor, is how those two work together. And when they work together, you have a definition based upon speech and a complete prohibition, which destroys our ability to speak. Last point, I don't blame my friend at the other table for taking the position and trying to narrow this law as much as he possibly can. It's the only way he can possibly have a chance here on this appeal. But if you look to Joint Appendix 16, if you look to Joint Appendix 20, what is actually being pushed here is much more broad than what the state wants to admit here on this appeal, unless this panel has any further questions. We would ask that the court reverse the district court's decision and remand for further proceedings. Thank you. Thank you. And thank you to both counsel for your arguments here today, as well as the briefing. We will take the matter under advisement.